(No. 37018.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESLIE HOSKINS, Plaintiff in Error.

*Opinion filed September 28, 1962.*

JULIUS LUCIUS ECHELES and CARL MINKUS, both of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED

G. Leach and E. Michael O'Brien, Assistant Attorneys General, and John T. Gallagher and M. Robert Ostrow, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

After a trial before a judge of the criminal court of Cook County, the defendant, Leslie Hoskins, was found guilty of unlawfully dispensing narcotics and was sentenced to imprisonment for a term of not less than ten nor more than fifteen years. On this writ of error he asserts that the prosecution knowingly used perjured testimony to bring about his conviction, and that he was entrapped into the commission of the offense.

There were three witnesses for the prosecution. Two of them, Arpaio and Mancini, were Federal narcotics agents. The third, Ysmael Luna, was an acquaintance and former neighbor of the defendant. Summarized, their testimony was that on the evening of August 18, 1959, agent Arpaio, in the company of two other men, met Luna, whom he had never seen before, at 22nd Street and Crawford Avenue in Chicago. Luna telephoned the defendant and told him that he had some friends who wanted to buy some "stuff." The four men then drove to a point near 15th and Tripp streets where Arpaio gave Luna $125 in government funds. There Luna left his three companions in the car, walked down the street and met the defendant, with whom he had a conversation. Agent Mancini had followed Luna after he left the car and testified that he saw Luna meet the defendant. He did not overhear their conversation, however, nor did he see anything pass between the two. Luna testified that the defendant handed him five packages in return for which he gave the defendant the money that had been given to him. Luna then returned to the car where he gave four of the packages to Arpaio and one to Thomas MacDonald, one of

the other men who was with agent Arpaio. It was stipulated at the trial that a government chemist would testify that the packages contained heroin.

The defendant testified that on the night of August 18, 1959, Luna, a former neighbor, telephoned him at the tavern where he worked as a bartender, and asked him to pick up a package from a "short, kind of chunky fellow" at the southwest corner of Madison and Kedzie streets. When he inquired about the nature of the package, Luna said, "Never mind * * * do it for me as a favor." The defendant left his work and drove to the indicated corner where a man whom he had never seen before approached his car, identified himself as "Buckwheat or Dub," inquired if the defendant was "Les," and then gave him a small package wrapped in newspaper. The defendant then drove to the place where he was to meet Luna and gave him the package. He asserted that he did not know that there were narcotics in the package and he denied that he received any money from Luna. He also denied that he had ever sold narcotics to Luna or that he was aware that Luna was an addict.

The defendant was arrested by Federal narcotics agents on September 17, 1959, and held overnight. Agent Arpaio testified that at that time the defendant said that he sold narcotics to Luna "as a favor" and that he had previously obtained narcotics from "Dub or Buckwheat." He was released on his promise to co-operate with the agents in the apprehension of narcotics sellers. On November 16, he was rearrested, and his indictment and conviction followed.

To support his assertion that perjured testimony was knowingly used by the prosecution at his trial, the defendant has filed in this court, as a supplemental record, a transcript of the proceedings that took place when Luna applied for probation after he had pleaded guilty to a separate indictment that charged him with conspiracy to violate the narcotic laws. At that time the assistant State's Attorney stated

to the court that a named Federal agent, who was present in the courtroom, had advised him that "the agreement was that probation would be granted this defendant." The record in the case now before us, however, contains Luna's unequivocal statement that he had not been promised favorable treatment.

Where there has been a ·knowing use of perjured testimony, that fact will not ordinarily appear from the record made at the trial. The relevant evidence is therefore put before a trial court in some form of post-trial proceeding. (See, *e.g., Napue* v. *Illinois,* 360 U.S. 264, 3 L. ed. 2d 1217, (post-conviction hearing); *Kyle* v. *United States,* (2d cir. 1961) 297 F.2d 507, (motion under 28 USCA 2255); *United States ex rel. Hamilton* v. *Maroney,* (W.D. Pa. 1960) 184 F. Supp. 721, *(habeas corpus)*; *People* v. *Savvides,* (1956) 1 N.Y.2d 554, 136 N.E.2d 853, (motion for new trial). In·this case, however, the defendants' claim has never been passed upon by any trial court, and the prosecution has had no opportunity to offer· evidence to meet it.

It is hard to see how the two contradictory statements upon which the defendant relies can be so reconciled as to avoid the force of his contention. Nevertheless, we are of the opinion that the defendant's contention is not now ripe for determination by this court, and that it should promptly be advanced in the criminal court of Cook County in a proceeding under the Post-Conviction Hearing Act. Ill. Rev. Stat. 1961, chap. 38, pars. 826-832.

At most, the defendant's contention that he was entrapped into the commission of the offense presented a question of the credibility of the witnesses. If the testimony of the witnesses for the prosecution is believed, the narcotics agents did not use any abhorrent tactics, *(cf. Sherman* v. *United States,* 356 U.S. 369, 2 L. Ed. 2d 848; *People* v. *Wilson,* 24 Ill.2d 425,) or any means that were calculated to evoke a response from one who was not ready and willing

to commit the offense. We see no reason to disturb the trial court's appraisal of the testimony, and the judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*