790 F.2d 365
 Norfleet LUCAS, Appellee
v.
John T. HADDEN, Warden, FCI, Ray Brook, NY, Board of
Probation & Parole, Commonwealth of Pennsylvania and the
Attorney General of the State of Pennsylvania and District
Attorney of the City of Philadelphia.
Appeal of The BOARD OF PROBATION AND PAROLE.
 No. 86-1119.
 United States Court of Appeals,
Third Circuit.
 Argued April 17, 1986.
Decided May 14, 1986.
 
 Leroy S. Zimmerman, Atty. Gen., Maria Parisi Vickers (argued), Senior Deputy Atty. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Office of Atty. Gen., Philadelphia, Pa., for appellant.
 Richard G. Freeman (argued), Philadelphia, Pa., for appellee.
 Before ADAMS, GIBBONS, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 The issue in this habeas corpus proceeding is whether petitioner, who had not exhausted his claim in the state courts, was properly granted bail prior to a ruling on the merits of his habeas corpus petition. We conclude that there were no special circumstances present to justify such extraordinary relief, and accordingly we will reverse.
 
 I.
 
 2
 Petitioner Norfleet Lucas was convicted in a Pennsylvania state court on March 27, 1973 for selling narcotics, and sentenced to eighteen months to ten years imprisonment. After serving approximately nineteen months of his sentence, Lucas was released on parole in October 1974.
 
 
 3
 Subsequently, in March 1981 and while still on parole, Lucas was arrested and indicted by federal authorities on six counts of distributing heroin, conspiring to distribute heroin, and aiding and abetting the distribution of heroin, in violation of 21 U.S.C. Secs. 841(a)(1), 846, and 18 U.S.C. Sec. 2(a) (1982). He pleaded guilty to these offenses. Upon learning of Lucas's federal convictions, the Pennsylvania Board of Probation and Parole (the Parole Board) on March 26, 1981 issued a parole violation warrant for Lucas and on July 16, 1981, the Parole Board ordered Lucas recommitted to prison for four years for violating his parole. At that time, Lucas was transferred to the custody of the Commonwealth.
 
 
 4
 After serving forty-seven days in a county prison, Lucas was released to the federal authorities in August 1981 for sentencing on his federal convictions. He was sentenced by the district court to serve four years in confinement on count I, the conspiracy charge, and three years on the other five counts charging distribution and aiding and abetting distribution, with the latter sentence to be followed by a three-year term of special parole. The commitment order of the district court specified that Lucas's four-year term was to be concurrent with his four-year state parole violation sentence, but that the federal four- and three-year sentences were to be consecutive to one another. After sentencing, Lucas was placed in a federal penitentiary.
 
 
 5
 Shortly thereafter, Lucas filed a motion under Federal Rule of Criminal Procedure 35, seeking reduction of his federal sentence. The district court denied the Rule 35 motion in an order filed February 10, 1982. In this order, the district judge reiterated his intention that Lucas's federal and state sentences be served concurrently. The district judge therefore recommended to the Attorney General that Lucas be remanded to the custody of the Commonwealth. Nonetheless, Lucas was returned to the federal penitentiary, where he remained for the balance of his federal custodial sentence.
 
 
 6
 Lucas was paroled by the federal authorities on January 24, 1986, having served fifty-eight months under his federal sentence. At that time, the Pennsylvania Parole Board, refusing to recognize the time served in federal prison as time served under his state parole violation sentence, recommitted Lucas to serve his four-year state sentence.
 
 
 7
 When he learned of the Commonwealth's intention to recommit him upon his release from federal custody, Lucas filed a habeas corpus petition under 28 U.S.C. Sec. 2254 (1982) on October 23, 1985. In his petition, Lucas asserted no constitutional violation nor did he identify any violation of federal law that was alleged to be the cause of his confinement. Rather, he claimed that his four-year state sentence had run, according to the district court's intention, concurrently with his federal term of imprisonment and that he should therefore be released from the custody of the Commonwealth.
 
 
 8
 The district court conducted a hearing on Lucas's habeas petition on February 10, 1986. During oral argument, the Pennsylvania Parole Board urged the district court to dismiss the petition because Lucas had not presented his claim to the state courts and thus had not exhausted his state remedies as required by Sec. 2254(b). The district court nonetheless was troubled by Lucas's continued confinement. Accordingly, while ordering Lucas to file an action under the Pennsylvania Post Conviction Hearing Act (PCHA), 42 Pa.Cons.Stat.Ann. Sec. 6501 et seq. (Purdon 1982) in order to exhaust his state remedies, and deferring its ruling on the merits of the federal habeas petition, the district court admitted Lucas to bail pending exhaustion of his claim in the state courts.
 
 
 9
 The Parole Board appealed to this Court from the district court's order that Lucas be released on bail, and requested an expedited briefing schedule. While this appeal was pending, Lucas filed a petition under the PCHA in the Pennsylvania Commonwealth Court. Lucas v. Commonwealth of Pennsylvania, Board of Probation and Parole, No. 501 C.D. (Pa. Commw.Ct.1986). But at the time of oral argument before this Court, the Commonwealth had not yet answered the petition, and neither party had requested expedited proceedings in that action.
 
 II.
 
 10
 In Johnston v. Marsh, 227 F.2d 528 (3d Cir.1955), we first addressed the question of a district court's authority to admit a state habeas petitioner to bail prior to ruling on his habeas corpus petition. The district court in Johnston had granted the request of the petitioner, who was extremely ill, that he be released from state custody and allowed to enter a hospital, pending resolution of his habeas petition. We held that the district court did not exceed its power in admitting the petitioner to bail for this purpose. The holding of Johnston was reaffirmed in United States ex rel. Slough v. Yeager, 449 F.2d 755 (1971). However, in Yeager we reversed the grant of bail to a habeas petitioner pending disposition of his petition in the district court, citing the absence of any "good cause" for such release. Id. at 756.
 
 
 11
 While Johnston and Yeager acknowledged the inherent power of a federal habeas tribunal to admit a state petitioner to bail pending a ruling on the claims asserted in the petition, they were not completely clear in announcing the standard under which a district court should evaluate a habeas petitioner's request for bail pending disposition of his petition. Other courts that have been faced with requests for bail prior to ruling on a habeas petition have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both. See, e.g., Eaton v. Holbrook, 671 F.2d 670, 670 (1st Cir.1982); Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir.1981); Calley v. Callaway, 496 F.2d 701, 702 (5th Cir.1974).
 
 
 12
 We doubt that it is appropriate to grant bail prior to ruling on a state habeas petition solely on the ground that there is a high likelihood of success on the merits, especially absent exhaustion of state remedies. The Supreme Court has never suggested that the exhaustion requirement is to be enforced only against habeas petitioners who raise claims that appear unlikely to succeed. The narrower "extraordinary circumstances" test would seem a more suitable standard by which to determine when bail may be granted to a habeas petitioner prior to a ruling on the merits of the petition. Such a standard reflects the recognition that a preliminary grant of bail is an exceptional form of relief in a habeas corpus proceeding.
 
 
 13
 Further, the results in Johnston and Yeager are consistent with the application of an "extraordinary circumstances" test. In Johnston, the petitioner was gravely ill and was granted bail on the condition that he enter a hospital to seek necessary medical care. And in Yeager, where no such circumstances were present, the grant of preliminary bail was reversed. Consequently, we conclude that, absent a showing of extraordinary circumstances, Lucas was improperly admitted to bail.
 
 
 14
 While we do not mean to suggest that a habeas petitioner's poor health is the only "extraordinary circumstance" that may justify a grant of bail prior to disposition of the habeas petition, the district court in this case was presented with no exceptional circumstances warranting Lucas's release. Nor has Lucas persuaded this Court that exceptional circumstances justify granting him extraordinary relief. Furthermore, it is conceded that Lucas has not exhausted his claim in the Pennsylvania courts as required by 28 U.S.C. Sec. 2254(b).[1] While the exhaustion requirement is not jurisdictional, Strickland v. Washington, 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984), it is to be strictly enforced and will be excused only under special circumstances, id. See Frisbie v. Collins, 342 U.S. 519, 520-21, 72 S.Ct. 509, 510-11, 96 L.Ed. 541 (1952). Other federal courts have denied bail to habeas petitioners who failed to exhaust available state remedies. See, e.g., Eaton, 671 F.2d 670 (reversing grant of bail); Parker v. Texas, 464 F.2d 572 (5th Cir.1972) (denying bail and affirming dismissal of habeas petition for failure to exhaust). Thus, the pendency of Lucas's PCHA petition in a Pennsylvania court is an additional ground for finding that he has not established the existence of circumstances warranting his admission to bail. We conclude that, on the facts present here, the grant of bail prior to disposition of the habeas petition was improper.
 
 III.
 
 15
 Because Lucas did not make the requisite showing of exceptional circumstances that would justify a grant of bail pending exhaustion of his claim in the State courts, the district court's order admitting him to bail will be reversed and the matter remanded to the district court so that the habeas petition may be denied for failure to exhaust state remedies.
 
 
 
 [1]
 Section 2254(b) provides:
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.